FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

99 APR 27 PM 2: 45

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| JOYCE FRANKLIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 96-BU-2928-S |
| | ) | |
| CITY OF BIRMINGHAM and | ) | **ENTERED** |
| CARNELLA NORMAN, | ) | |
| | ) | APR 27 1999 |
| Defendants. | ) | |

## MEMORANDUM OPINION

The case is presently pending before this Court on Motion for Summary Judgment,

filed by the Defendants. (Doc. 31). The Court has reviewed the record and determined that

the Motion is due to be granted in part and denied in part.

## I. SUMMARY JUDGMENT STANDARD

Summary judgment provides the parties an opportunity to test the mettle of a case

before it ever reaches trial. On a motion for summary judgment, the Court assesses all of

the proof the parties bring to bear in order to ascertain whether there is a genuine need for

a trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct.

1348, 1356, 89 L. Ed. 2d 538 (1986)(quoting Advisory Committee Note to 1963

Amendment to Fed. R. Civ. P. 56(e)). Summary judgment is appropriate only if the Court

concludes that no genuine issue of material fact exists and that the moving party is entitled

to judgment as a matter of law. Fed. R. Civ. P. 56(c); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).

A party seeking summary judgment has the initial responsibility of informing the Court of the grounds for its motion and specifically identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits that it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323, 106 S. Ct. at 2553; Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). The moving party's burden is not meager; it must illuminate for the Court the reasons why the non-moving party cannot or does not raise a genuine issue of material fact sufficient to support a trial. Clark, 929 F.2d at 608. The moving party's burden was set forth in Clark as follows:

The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment. Celotex did not change the general rule. Celotex simply holds that under certain circumstances the movant may meet its Rule 56 burden without negating an element of the non-moving party's claim and that under such circumstances it is sufficient to point to materials on file that demonstrate that the party bearing the burden of proof at trial will not be able to meet that burden. Even after Celotex it is never enough to simply state that the non-moving party cannot meet its burden at trial.

Id. (citing Celotex, 477 U.S. at 323-25, 106 S. Ct. 2553-54).[1]

---

[1]The Eleventh Circuit recognized that Celotex created "an exception to the Adickes [Adickes v. S.H. Kress & Co., 398 U.S. 144, 90 S. Ct. 1598, 26 L. Ed. 2d 142

Once the moving party has satisfied this initial burden, however, the nonmoving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." *Howard v. BP Oil Company*, 32 F.3d 520, 523 (11th Cir. 1994). "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(e)); *see Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). However, "Rule 56 . . . does not impose upon the district court a duty to survey the entire record in search of evidence to support a non-movant's opposition." *Id.*; *see also Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir.) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment."), *cert. denied sub nom. Jones v. Resolution Trust Corp.*, 516 U.S. 817, 116 S. Ct. 74, 133 L. Ed. 2d 33 (1995).

In resolving whether a given factual dispute requires submission to a jury, the Court must inspect the presented evidence through the looking glass of each party's substantive evidentiary burden. *Anderson*, 477 U.S. at 254-55, 106 S. Ct. at 513. The Court, however,

---

(1970)] rule for [an] uncommon situation," i.e., "when neither party could prove either the affirmative or the negative of an essential element of the claim." *Clark*, 929 F.2d at 607, 608. In this "uncommon situation," the *Celotex* exception allows a moving party to carry its burden by showing or "pointing out," by reference to record, that the non-moving party cannot prove its claim. *Id.* at 607.

must not weigh conflicting evidence for probity or make credibility determinations. *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992). "It is not part of the court's function, when deciding a motion for summary judgment, to decide issues of material fact, but rather determine whether such issues exist to be tried. The Court must avoid weighing conflicting evidence or making credibility determinations." *Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913, 919 (11th Cir. 1993)(citations omitted). At the same time, "[t]he nonmoving party must provide more than a mere scintilla of evidence to survive a motion for judgment as a matter of law; 'there must be a substantial conflict in evidence to support a jury question.'" *Tidwell v. Carter Products*, 135 F.3d 1422, 1425 (11th Cir. 1998) (quoting *Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir.1989)).

## II.   STATEMENT OF FACTS[2]

Joyce Franklin, the plaintiff, is a white female employed by the City of Birmingham in the Municipal Court Department. She is a merit system employee in the classified position of Senior Legal Secretary. Ms. Franklin has worked in this classification in the Municipal Court Department since 1977.

In May of 1994, Defendant Carnella Norman was appointed presiding judge for the Municipal Court Department. Judge Norman had served as a night-court judge for several

---

[2]As required when determining a Motion for Summary Judgment, the Statement of Facts reflects the facts in the light most favorable to Ms. Franklin, the non-moving party. All disputed facts are resolved in her favor and all reasonable inferences arising from those facts are drawn in her favor. *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89, 110 S. Ct. 3177, 3188-89, 111 L. Ed. 2d 695 (1990); *Zaben v. Air Products & Chemicals, Inc.*, 129 F.3d 1453, 1455 (11th Cir. 1997).

years before being appointed presiding judge. Judge Norman is black.

At the time Judge Norman became presiding judge, Ms. Franklin's job assignments and duties included: (1) secretarial duties for the presiding judge and all other municipal court judges, including typing, answering the telephone, making travel arrangements, arranging replacement judges, and handling correspondence; (2) participation in budget preparation; (3) fixed assets manager; (4) payroll coordinator; and (5) coordinate BIDDS program. With the exception of the responsibilities related to the BIDDS program, which was eliminated, Judge Norman reassigned Ms. Franklin's responsibilities and duties to other, black employees over approximately two years, beginning after Judge Norman was appointed but before she took office. After she was appointed, Judge Norman told Ms. Franklin that she was not going to use her as her secretary; instead, Judge Norman had Ms. Franklin train Raymelda Jeter , who was classified as an index clerk, to perform the secretarial duties. Ms. Jeter is black. At this time Judge Norman told Ms. Franklin that "she was sure [Ms. Franklin] could find something else to do."Franklin Depo., [Vol. I], p. 98.

Over the next couple of years, Judge Norman had Ms. Franklin train other black employees to assume job duties and assignments previously performed by Ms. Franklin, until all Ms. Franklin's prior job duties and assignments were eliminated. Currently, Ms. Franklin performs entry-level clerk typist duties. She testified that she does not know what her actual duties are, as they change from day-to-day. Despite the elimination of her primary duties and responsibilities, Ms. Franklin's grade and pay did not change.

Judge Norman never offered Ms. Franklin a reason for the reassignment of her duties. When asked in her deposition why she did "not want to have Joyce Franklin, who

had experience and knowledge within the department, directly assist [her]," Judge Norman responded that she exercised her "managerial discretion." In this Court, Defendants contend that Judge Norman reassigned Ms. Franklin as part of a reorganization plan and because it was in her discretion to choose who would perform the duties of her personal assistant.

When Judge Norman changed Ms. Franklin's job duties and assignments, she changed Ms. Franklin's direct supervisor from herself to Norman Glass, Chief Court Clerk for the Municipal Court Department. Mr. Glass told Ms. Franklin that Judge Norman had told him to tell Ms. Franklin that Judge Norman did not want any direct contact with Ms. Franklin.

Ms. Franklin complains of other conduct by Judge Norman, including yelling at her, following her on occasion, and isolating her from her co-workers.

In addition to claims regarding the change in her job duties and assignments, Ms. Franklin claims that she was denied two promotions: (1) traffic citation supervisor, awarded to Barbara Curtis, black, in August 1994; and (2) Court Coordinator, awarded to Linda Knight, white, appointed some time in 1995.

A selection committee was utilized to select the person to fill the Court Coordinator position. Mr. Glass was on the selection committee, as well as two other division heads, Barbara Curtis and Ron Truss. Mr. Glass testified that the committee submitted the names of their top three candidates, including Linda Knight, to Judge Norman. He testified that Judge Norman asked him to name his top candidate and he recommended Ms. Knight. Ms. Knight was selected by Judge Norman, who submitted her name for approval to the

Mayor. Ms. Franklin was ranked number one on the list of candidates received from the Personnel Board. However, she was not in the top three candidates because, according to Mr. Glass, she lacked significant courtroom experience.

Ms. Franklin complained to Gordon Graham, Personnel Director. The first time she complained about her working conditions, she did not tell Mr. Graham that she believed the change in her working conditions was based on her race. However, later, she did complain to Mr. Graham that she believed Judge Norman's actions were racially discriminatory. Mr. Graham told Ms. Franklin that she could file a grievance or complaint with the Jefferson County Personnel Board and/or the Mayor's office. Ms. Franklin testified that she did not complain to the Mayor's Office because Judge Norman's father is employed as an assistant to the Mayor.

## III.    DISCUSSION

### A.    FEDERAL EMPLOYMENT DISCRIMINATION CLAIMS

1.    TITLE VII

Ms. Franklin's Complaint asserts numerous violations of Title VII against the City, her employer.

a.    Constructive Demotion/Change in Job Duties

i.    Adverse Employment Action

The parties do not dispute that Judge Norman changed Ms. Franklin's job duties and assignments. However, the City contends that, because her title, pay, and benefits are the same, Ms. Franklin had not suffered an adverse employment action in violation of

Page 7 of 33

Title VII.

Whether a change in job duties and assignments constitutes an actionable adverse employment action turns on whether a reasonable person would have found the change to be adverse to their employment. The Eleventh Circuit has held that a plaintiff must show that "a reasonable person in [the plaintiff's] position would have found [the reassignment of her duties] to be adverse under all the facts and circumstances. *Doe v. Dekalb County School District*, 145 F.3d 1441, 1453 (11th Cir. 1998). Among the facts and circumstances affecting whether a change in a plaintiff's job is considered "adverse" are changes that result in "lesser pay, responsibilities or prestige," and changes that "involve arduous travel or that impede an employee's professional growth or advancement." *Id*. at 1452.

The fact that the changes in her job duties and assignments did not effect her title, pay, or benefits is not dispositive of the issue of whether those changes constitute an adverse employment action. "Although direct economic harm is an important indicator of a tangible adverse employment action, it is not the *sine qua non*. If an employer's act substantially decreases an employee's earning potential and causes significant disruption in his or her working conditions, a tangible adverse employment action may be found." *Durham Life Insurance Co. v. Evans*, 166 F.3d 139, 153 (3d Cir. 1999). However, a plaintiff does not have to prove a "tangible" adverse employment action to prove a claim under Title VII.

> Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). As we have made clear in

*Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 106 S. Ct. 2399, 91 L. Ed. 2d 49 (1986), this language is "not limited to 'economic' or 'tangible' discrimination. The phrase 'terms, conditions, or privileges of employment' evinces a congressional intent 'to strike at the entire spectrum of disparate treatment of men and women' in employment," which includes requiring people to work in a discriminatorily hostile or abusive environment.

*Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S. Ct. 367, 370, 126 L. Ed. 2d 295 (1993)(quoting *Meritor Savings Bank*, 477 U.S. at 64, 106 S. Ct. at 2404 (quoting *Los Angeles Department of Water and Power v. Manhart*, 435 U.S. 702, 707 n.13, 98 S. Ct. 1370, 1374 n.13, 55 L. Ed. 2d 657 (1978))).

Ms. Franklin presented evidence that she has effectively lost all of her significant duties and assignments since Judge Norman became the Presiding Municipal Court Judge. Prior to the change in job duties, Ms. Franklin performed numerous tasks associated with being the secretary to the presiding judge and other judges on the Municipal Court, she was assigned duties associated with payroll, personnel attendance records, and asset management. She now performs duties and task more appropriately assigned to entry-level employees and she is assigned these tasks on an ad hoc basis . She testified that she does not even know what her official duties are and that she just performs tasks as asked by other employees or her supervisor, Mr. Glass. She said, "I don't know what I do anymore. Its just whatever somebody tells me to do. I can tell you what I did yesterday, I don't know what I'll do tomorrow." Franklin Depo.(Vol. 1), p. 171. In response to a question regarding "economic opportunities," Ms. Franklin testified:

Certainly, that the duties I have now I'm not learning any new skills that might make me promotable in the future. I know that as secretary to the presiding judge I was always learning new payroll, computer payroll duties and procedures. Budget, we were always having meetings about budget

and requisitioning. And I felt like my skills were being improved as a result of this training. And now that I don't have budget work and payroll work, I don't feel I'm growing, that I'm growing any as far as my skills. My typing skills, I don't do as much general typing as I did for the presiding judge, I do more like form letters. So, possibly my existing skills that I had at one time will suffer or [have] suffered.

Franklin Depo. (Vol. 2), p. 377.

This Court finds that, based on Ms. Franklin's testimony, a sufficient question of fact exists as to whether the changes in her job assignments and duties constituted adverse employment actions.

    ii.    Pretext

The City contends that Ms. Franklin cannot prove that the changes in her job assignments and duties was discriminatory because she cannot show that the articulated reasons for those changes are pretextual. The City asserts two reasons for the changes in Ms. Franklin's job assignments and duties: (1) reorganization of the Municipal Court Department to increase efficiency; and (2) Judge Norman had the prerogative to choose who would be her confidential secretary.

To withstand a defendant's motion for summary judgment, a plaintiff must show that a genuine question exists as to whether the reason for the decision was discrimination. See Howard v. BP Oil Co., 32 F.3d 520, 525 (11th Cir. 1994). The Eleventh Circuit, interpreting St. Mary's Honor Center, stated:

> St. Mary's holds that proof that a defendant's articulated reasons are false is not proof of intentional discrimination; it is merely evidence of intentional discrimination. However, evidence of intentional discrimination is all a plaintiff needs to defeat a motion for summary judgment. That evidence must be sufficient to create a genuine factual issue with respect to

the truthfulness of the defendant's proffered explanation.

*Id.* Identification of inconsistencies in the defendant's testimony is evidence of pretext; while mere denial of the credibility of defendant's witnesses is not. *Id.* at 526. "Under *St. Mary's*, a plaintiff withstands summary adjudication by producing sufficient evidence to allow a reasonable finder of fact to conclude that the defendant's articulated reasons for its decision are not believable." *Id.; see also Walker v. Nationsbank*, 53 F.3d 1548, 1562 (11th Cir. 1995)("[I]t is reasonable for a factfinder to infer an improper discriminatory motive from the fact that an employer has proffered false reasons.")(Johnson, J., specially concurring).

Evidence of a pretextual explanation can be established by showing "that the employer's proffered reasons are (1) factually baseless, (2) not the actual motivation for the [employment decision]; or (3) insufficient to motivate the [employment decision]." *Tincher v. Wal-Mart Stores, Inc.*, 118 F.2d 1125, 1130 (7th Cir. 1997). Nevertheless, "[t]he mere fact that the employer acted incorrectly or undesirably, however, cannot adequately demonstrate pretext; rather, the employee must prove that the employer did not honestly believe the reasons it gave for the [employment decision]." *Id.*

The City contends that Ms. Franklin's reassignment to other job duties was part of a reorganization of the Municipal Court designed to increase efficiency. However, evidence in the record suggests that the reason is false. Judge Norman states in her affidavit that she reviewed the Operational Audit conducted in 1991, and, on the basis of this "implemented changes that [she] deemed would help the Court System run more efficiently. She further submits that she "examined the duties and the functions performed

by all administrative staff including Franklin and assigned and reassigned duties in an effort
to increase efficiency and productivity in a manner consistent with the duties of each
employee's job classification." Norman Aff. ¶ 4.

Judge Norman's deposition testimony, however, indicates that she did not know
what duties Ms. Franklin was performing. For example, she testified that she did not know
that Ms. Franklin had performed the duties of payroll coordinator for 17 years and that no
one other than Ms. Franklin had performed those duties during that time period. Norman
Depo. (Vol II), pp. 43-44. Indeed, Judge Norman specifically testified, in contradiction to
her affidavit statement, that she did not know what the employees had been doing prior to
reorganization. Norman Depo. (Vol. I), pp. 154-55.

Also, the evidence could reasonably demonstrate that Judge Norman's alleged
reliance upon the Operational Audit is pretext. The Audit praises the employees, stating
that the Court has been able to keep up with its heavy caseload only because of
experienced, knowledgeable, resourceful, productive and motivated staff. Def. Exh. 17,
pp. 8-9. The audit determined that inefficiency and effectiveness were detrimentally
affected by:

1.  Inadequate and geographically separated facilities
2.  Under-staffing
3.  Understaffed Law Department and Public Defender Service
4.  Overly broad span of administrative, operational and supervisory
    responsibility for the Chief Court Clerk.

Def. Exh. 17, p. 3. Moreover, the audit praised the BIDDS program, one of Ms. Franklin's
responsibilities eliminated by Judge Norman's suspension of the program; the audit called
BIDDS a "highlight of the case processing analysis." *Id.* at 11. Finally, and perhaps most

Page 12 of 33

illustrative of the fact that Judge Norman did not rely upon the Operational Audit, is the audit's finding that secretarial support for judges was "severely limited." *Id.* at 23. At the time of the audit, Ms. Franklin was the only "secretary," according to job classification, and yet, despite the fact that secretarial services were "severely limited, Ms. Franklin's secretarial duties for judges were eliminated.

Based on the foregoing, there is a genuine issue of material fact as to the City's articulated reason that Ms. Franklin's job assignments and duties were changed to increase efficiency of the Department.

The City contends that another reason for changing Ms. Franklin's job assignments and duties was because Judge Norman had that prerogative.[3]  In other words, the City contends that Judge Norman preferred another personal secretary and that she had the discretion of her office to effectuate such a change in job duties.  While it is accurate to state that the law affords the judge certain discretion in selecting and/or retaining a confidential secretary, there is no legal support for the proposition that the judge can make decisions regarding personal or "confidential" employees on the basis of race.[4]  Indeed,

---

[3]Webster's defines "prerogative" as, "A right to exercise a power or privilege in priority to, or to the exclusion of, others; esp., a right attached to an office or rank to exercise a special privilege or function; specif., an official and hereditary right, as the *royal prerogative*, which may be asserted without question, and for the exercise of which in theory there is no responsibility or accountability as to the fact and the manner of its exercise."  Webster's new International Dictionary, p. 1953 (2d ed. unabridged 1955).

[4]The Court notes that 42 U.S.C. § 2000e(f) exempts from Title VII protection certain "confidential" employees; the section states that 'the term 'employee' shall not include any person elected to public office in any State or political subdivision of any State . . . or any person chosen by such officer to be on such officer's personal staff . . .

the law is quite clear and well-settled that employment decisions, even when within the discretion of the decision-maker, cannot be based on a discriminatory motive. In other words, assuming Judge Norman had the authority to choose another employee to perform the duties of her secretary,[5] she could not "prefer" to have another person perform the secretarial duties on the basis that Ms. Franklin is white and Judge Norman "preferred" a black secretary.

The City submitted the affidavit of Gordon Graham, the Personnel Director for the City of Birmingham, which states:

> Judge Norman assigned some of the tasks and duties previously performed by [Ms.] Franklin to other administrative employees within the office. Most of the reassigned tasks and duties were those that would be performed by Judge Norman's personal secretary such as making her personal travel arrangements or opening her mail.[6] Judge Norman is free to choose who will serve as her personal secretary and assistant and can assign duties to that person accordingly.

Graham Aff., ¶ 6. However, other than asserting her "preference," Judge Norman's

___

." However, this exemption from Title VII protection "shall not include employees subject to the civil service laws of a State government, government agency or political subdivision." It is undisputed that Ms. Franklin's employment with the City is subject to the civil service laws.

[5]There is evidence in the record that there is only one legal secretary position allocated to the Municipal Court Department, and a reasonable inference from this fact is that Ms. Franklin, the only classified "secretary, is the person assigned to perform the secretarial duties for the judges in the Municipal Court. Thus, a reasonable jury could find that Judge Norman did not have the discretion to reassign the secretarial duties performed by Ms. Franklin without reclassifying the position.

[6]As set forth above, Ms. Franklin's job duties and assignments that have been reassigned to others are more extensive than making travel arrangements and opening mail.

motivation regarding changing Ms. Franklin's assignment and duties has not been articulated. Although Title VII does not *compel* Judge Norman to retain Ms. Franklin , it does not *permit* Judge Norman to reassign Ms. Franklin to other duties on the basis of her race. *See McDonald v. Santa Fe Trail Transportation Co.*, 427 U.S. 273, 283, 96 S. Ct. 2574, 2580, 49 L. Ed. 2d 493 (1976)(quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804, 93 S. Ct. 1817, 1825, 36 L. Ed. 2d 668 (1973)).

In other words, if Ms. Franklin convinces the jury that Judge Norman reassigned her duties to other employees because Judge Norman preferred to work with black employees or did not want to work closely with a white employee, Judge Norman's reassignment of Ms. Franklin's duties, although within her authority and discretion as presiding judge, constitutes an unlawful employment practice. Thus, the Court finds that the mere assertion that Judge Norman had the "prerogative" as presiding judge to reassign the duties of Ms. Franklin is not sufficient to articulate a non-discriminatory reason or motive for Judge Norman's decision.

Based on the foregoing, this Court finds that the City's Motion for Summary Judgment is due to be denied as to Ms. Franklin's Title VII claim that the changes in her job duties and assignments were made on the basis of her race.

          b.     Failure to Promote

               i.     Traffic Citation Supervisor

The City contends that Ms. Franklin's claim that she was not selected for the position of Traffic Citation Supervisor because of race discrimination and/or retaliation is

time-barred. Barbara Curtis, a black female, was promoted to the position of Traffic Citation Supervisor in August 1994. Ms. Franklin filed her EEOC charge on September 19, 1996.

A timely-filed EEOC charge is a prerequisite to filing a complaint alleging a violation of Title VII. "In order to be timely, the charge must have been filed within 180 days of the 'alleged unlawful practice.'" *Beavers v. American Cast Iron Pipe*, 975 F.2d 792, 796 (11th Cir. 1992)(quoting 42 U.S.C. § 2000e-5(e)(1)). Clearly, Ms. Franklin did not timely file her EEOC charge with regard to the August 1994 promotion.

Ms. Franklin argues that she filed her EEOC charge timely as to the Traffic Citation Supervisor position because she filed her claim as soon as she had "a reasonable basis to believe that her non-selection as Traffic Citation Supervisor was racial." *See* Plaintiff's Responsive Submission, p. 10. Ms. Franklin does not cite any legal authority for the proposition that the statute of limitations for filing an EEOC charge begins to run when the complainant has a "reasonable basis to believe" that she has been the victim of illegal discrimination. However, the Court notes that the Eleventh Circuit has allowed equitable modification of the limitations period so that the "limitations period does not start to run until *the facts which support the charge of discrimination are apparent or should be apparent to a person with a reasonably prudent regard for his rights.*" *Sturniolo v. Sheaffer, Eaton, Inc.*, 15 F.3d 1023, 1025 (11th Cir. 1994)(emphasis added). The Court went on to hold that it is not necessary that the complainant "know all the facts that support his claim" to begin tolling the statute of limitations. *Id*. Rather, the complainant knows "facts which support the charge of discrimination," and, thus tolling begins, when the complainant knows that

Page 16 of 33

a person outside the protected class replaced him or, in the case of a promotion, was selected for the position. *Id.* at 1025-26.

The parties do not dispute that Ms. Franklin knew that Ms. Curtis had been appointed to the position of Traffic Citation Supervisor in August 1994. Thus, the statute of limitations for filing an EEOC charge alleging her non-selection for the position began to run in August 1994.

Ms. Franklin also asserts that the failure to promote her to the position of Traffic Citation Supervisor in August 1994 is actionable against the City and Judge Norman through 42 U.S.C. § 1983, for violations of rights protected by the Equal Protection Clause of the Fourteenth Amendment and 42 U.S.C. § 1981.[7]

Section 1983 has a two-year statute of limitations in this Court. *Dukes v. Smitherman*, 32 F.3d 535, 537 & n.1 (11th Cir. 1994). Ms. Franklin filed her Complaint on November 8, 1996. Because her Complaint was filed more than two years after she was denied the promotion to the position of Traffic Citation Supervisor, her claim brought pursuant to Section 1983 is time barred.

Based on the foregoing, Plaintiff's claims related to the failure to promote her to Traffic Citation Supervisor in August 1994 are due be dismissed and a summary judgment is due to be granted in favor of Defendants.

            iii.    Court Coordinator

The City argues that it is entitled to a summary judgment as to Ms. Franklin's claim

---

[7]*See* discussion, *supra*, pp. \*\*-\*\*.

that she was denied the position of Court Coordinator on the basis of her race. It contends that Ms. Franklin cannot establish a *prima facie* case of race discrimination because another white employee, Linda Knight, was selected for the position.[8] The Court is not at all sure that a claim of race discrimination with relation to the Court Coordinator position is even at issue in this case, *see* Plaintiff's Responsive Submission, p. 9-10; nevertheless, assuming the Complaint asserts such a claim, it is evident that Ms. Franklin cannot establish a prima facie case of race discrimination because the position was awarded to another white employee. Therefore, the City's Motion for Summary Judgment is due to be granted as to Ms. Franklin's race discrimination claim with regard to the Court Coordinator promotion.

As to Ms. Franklin's claim that she was denied a promotion to the Court Coordinator position in retaliation for engaging in protected activity, the City contends that Ms. Franklin cannot establish that the articulated reason for the promotion decision was a pretext.[9] The City asserts that Ms. Knight was selected because she was considered better qualified for

---

[8]"To establish [a] prima facie case of discriminatory failure to promote, [the plaintiff] must show that (1) he was in a protected group; (2) he was not given the promotion; (3) he was qualified for the promotion; and (4) someone outside the protected group was given the position." *Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1333 (11th Cir. 1998)(citing *Coutu v. Martin County Board of County Commissioners*, 47 F.3d 1068, 1073 (11th Cir. 1995)).

[9]The parties do not dispute that Ms. Franklin can establish a prima facie case of retaliation with regard to her non-selection for the position of Court Coordinator. To establish a prima facie case of retaliation, "a plaintiff must show that (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) there is some causal relation between the two events." *Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir. 1998).

the position by the selection committee, who recommended her selection to Judge Norman, who, in turn, passed the recommendation along to the Mayor for appointment. Movant's Initial Submission, p. 11.

Mr. Glass, Ms. Franklin's supervisor, was on the selection committee. Ms. Franklin admits in her deposition that she knew that Mr. Glass had "always preferred" Ms. Knight for the position. She testified, "He [Mr. Glass] wanted someone who could work in those courtrooms. And I'm assuming that's why he selected Linda or rather when he recommended Linda, he doesn't do the selection." Franklin Depo. (Vol. I), p. 247. Indeed, Mr. Glass testified that Ms. Franklin was not one of the committee's top three choices to fill the position, despite the fact that Ms. Franklin was ranked number one on the Personnel Board's list, because of her limited courtroom experience. Glass Depo., p. 85. He also stated that Judge Norman asked him who he would select, he told her Ms. Knight, and she followed his recommendation.

Ms. Franklin has not submitted sufficient evidence to show that the articulated reason for selecting Ms. Knight is a pretext for retaliation. Therefore, the City's Motion for Summary Judgment is due to be granted as to Ms. Franklin's Title VII claim that she was wrongfully denied a promotion to the position of Court Coordinator.

c.      Failure to Transfer

The City contends that Ms. Franklin cannot establish that she was denied transfers to other departments, outside the Municipal Court Department, in retaliation for complaining about race discrimination. After a review of Plaintiff's Complaint, the Court has determined that the Complaint does not contain a claim of retaliation with regard to the

denial of a transfer. Therefore, because the claim is not in the Complaint, the City's Motion for Summary Judgment is moot.

d.    Hostile Work Environment

In order to establish a hostile or abusive work environment, either on the basis of race or retaliation, a plaintiff must establish that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Systems*, 510 U.S. 17, 21, 114 S. Ct. 367, 370, 126 L. Ed. 2d 295 (1993). The City contends that the conduct of which Ms. Franklin complains was not sufficiently severe or pervasive to constitute a hostile work environment. They also contend, citing Eleventh Circuit case law, that "[u]nfair treatment, absent discrimination based on race, sex, or national origin, is not an unlawful employment practice under Title VII." Movants' Initial Submission, p. 18 (quoting *Coutu v. Martin County Board of County Commissioners*, 47 F.3d 1068, 1074 (11th Cir. 1995)). However, as stated above, this Court finds sufficient evidence to establish a triable issue of material fact as to Judge Norman's conduct with regard to the reassignment of Ms. Franklin and the existence of race as a motivating factor; therefore, at least part of the "unfair treatment" of which Ms. Franklin complains was based on race.

Moreover, this Court finds that a reasonable jury could conclude that, in addition to reassigning Ms. Franklin to other duties, Judge Norman acted in other ways to separate herself from contact with Ms. Franklin, such as instructing Mr. Glass to tell Ms. Franklin not to talk to her directly. Based on all the circumstances, a reasonable jury could conclude

that Judge Norman did not want to work with or around Ms. Franklin because she was white, and/or that judge Norman preferred to work with or around black employees. However, a reasonable jury could not find that Judge Norman's acts, even though motivated by discrimination, were permeating the work place with intimidation, ridicule and insult. *See Harris*, 510 U.S. at 21, 114 S. Ct. at 370. To be sure, if a jury were to find that Judge Norman acted as this Court is compelled to assume for purposes of summary judgment, such conduct is discriminatory and unfair. However, it is not "hostile" or "abusive."

Therefore, based on the foregoing, the City's Motion for Summary Judgment as to Ms. Franklin's Title VII claim regarding a hostile work environment is due to be granted.

B.    SECTION 1983

1.    First Amendment Free Speech

Ms. Franklin contends that Judge Norman retaliated against her for exercising her right to free speech. Specifically, she complains that Defendants retaliated against her for complaining that Judge Norman was discriminating against her. In order to be protected, Ms. Franklin's speech must address a matter of "public concern." *Connick v. Myers*, 461 U.S. 138, 146-47, 103 S. Ct. 1684, 1690, 75 L. Ed. 2d 708 (1983)("[W]hen a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of the personnel decision taken by a public agency allegedly in reaction to the employee's behavior."). The Eleventh Circuit has held "that no First Amendment protection attaches to speech that --

for personal benefit -- exposes personally suffered harassment or discrimination." *Tindal v. Montgomery County Commission*, 32 F.3d 1535, 1539 (11th Cir. 1994)(citing *Morgan v. Ford*, 6 F.3d 750, 754-55 (11th Cir. 1993)).

The speech at issue in this case is Ms. Franklin's complaints about discrimination and retaliation in her employment; these complaints were made to Mr. Graham in order to solicit his assistance in correcting the situation. The Eleventh Circuit has held that complaining about personal discrimination is not speech on a matter of public concern; rather, such speech is of a personal nature. Thus, Ms. Franklin cannot establish a violation of her First Amendment right to free speech. Summary Judgment in favor of the Defendants is due to be granted on such claim.

2.    Employment Discrimination

In addition to complaining of Title VII violations, Ms. Franklin's complaint contains two additional counts alleging race discrimination and retaliation, Count I -- Section 1983 and Count II -- Section 1981. The Court notes, "Section 1983 permits an individual to obtain legal redress for a violation of his constitutional rights by a state actor. It is not, by itself, a source of substantive federal rights. It 'merely provides "a method for vindicating federal rights elsewhere."'" *Shows v. Morgan*, 1999 WL 149831, at *4, _____ F. Supp. _____ (M.D. Ala. Mar. 17, 1999)(quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3, 99 S. Ct. 2689, 2694 n.3, 61 L. Ed. 2d 433 (1979)). However, Ms. Franklin's Complaint does not specifically state the federal statutory or constitutional law violated by Judge Norman's actions. However, she alleges that Judge Norman's actions constitute illegal race discrimination; therefore, this Court deems that Ms. Franklin's § 1983 claim seeks

vindication of her rights established by the Equal Protection Clause of the Fourteenth Amendment and 42 U.S.C. § 1981.

As stated above, Ms. Franklin's Complaint contains a separate count alleging violations of 42 U.S.C. § 1981. However, pursuant to *Jett v. Dallas Independent School District*, 491 U.S. 701, 735-36, 109 S. Ct. 2702, 2723, 105 L. Ed. 2d 598 (1989), an action under § 1983 provides "the exclusive federal damages remedy for the violation of rights guaranteed by § 1981 when the claim is pressed against a state actor." *Id.* Therefore, the separate claim asserting rights established under § 1981 against a state actor is due to be dismissed, as the claimed violation of these rights is actionable only through a § 1983 action.

The elements of a § 1983 claim, alleging violations of rights protected by the Equal Protection Clause and/or § 1981, are identical to the elements of a Title VII claim, when asserted as a parallel remedy. The Eleventh Circuit has held:

> In order to establish a violation of the Equal Protection, [the plaintiff] must prove discriminatory motive or purpose. *Whiting v. Jackson State University*, 616 F.2d 116, 122 (5th Cir. 1980). The court in *Whiting* held that "such intent should be inferred in the same manner as [the Supreme Court] said it is inferred under [42 U.S.C. § 2000e-5]." *Whiting*, 616 F.2d at 121. "When section 1983 is used as a parallel remedy for violation of section 703 of Title VII [42 U.S.C. § 2000-2], the elements of the two causes of action are the same. *Hardin v. Stynchcomb*, 691 F.2d 1364, 1369 n.16 (11th Cir. 1982)(citing *Whiting*, 616 F.2d at 123).

*Cross v. State of Alabama*, 49 F.3d 1490, 1507-08 (11th Cir. 1995). The *Whiting* decision also held that a § 1981 claim had identical elements to a Title VII claim. Moreover, the Court held:

> There is no question that under section 1981, the plaintiff must establish

purposeful discrimination equivalent to that required by those alleging fourteenth amendment dereliction. But when section 1981 is merely used as a companion remedy provision to section 706 [42 U.S.C. § 2000e-2], we hold that such intent should be inferred in the same manner as . . . it is inferred under section 706.

*Whiting,* 616 F.2d at 121.

Therefore, it follows that -- if the elements are identical for claims asserting race discrimination in public employment, regardless of whether the claims are asserted pursuant to Title VII, § 1981, or the Equal Protection Clause -- this Court's determination, set forth *supra,* that Ms. Franklin has submitted sufficient evidence to withstand the City's Motion for Summary Judgment only as to the constructive demotion/change in job duties claim, applies to her § 1983 claims.

Defendants's Motion for Summary Judgment is due to be granted as to Ms. Franklin's § 1983 claims alleging race discrimination and retaliation with regard to promotions and hostile work environment.[10]  Therefore, this Court now turns to the issues of liability pursuant to § 1983 for the alleged racially discriminatory change in duties and assignments.

         a.    Qualified Immunity

Judge Norman, in her individual capacity, contends that she is entitled to qualified immunity because no precedent existed prior to May 2, 1994, the date she became Presiding Judge, clearly establishing "that reorganization of the municipal court in such a

---

[10]As set forth above, Defendants seek a summary judgment as to Ms. Franklin's claim regarding transfers. However, the Court has determined that Ms.Franklin does not have a claim for failure to transfer.

manner as to change the duties and responsibilities of a senior legal secretary who formerly served as confidential secretary could conceivably constitute the violation of a federally protected right where the employee maintained her job classification, her full pay and all benefits." Movants' Initial Submission, p. 21. Judge Norman's articulation of the issue does not address whether Judge Norman could change the duties and responsibilities of Ms. Franklin *on the basis of race* and violate clearly established law.

"Government officials may be shielded from liability for damages in a § 1983 action if, at the time they acted, the statutory or constitutional right allegedly violated was not 'clearly established.'" *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1478 (11th Cir. 1991). In order for a right to be "clearly established," "[t]he law must have been developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that 'what he is doing' violates federal law." *Gonzalez v. Lee County Housing Authority*, 161 F.3d 1290, 1295 (11th Cir. 1998)(quoting *Lassiter v. Alabama A & M University Board of Trustees*, 28 F.2d 1146, 1149 (11th Cir. 1994)(en banc)(quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 3039, 97 L. Ed. 2d 523 (1987))).

The Eleventh Circuit has established a two-part analysis for determining whether a public official is entitled to qualified immunity. *Lenz v. Winburn*, 51 F.3d 1540, 1546 (11th Cir. 1995). The defendant must establish that she acted within the scope of her discretionary authority. *Id*. If the defendant establishes that she was acting within the scope of her discretion, the burden shifts to the plaintiff to establish that defendant's conduct violated clearly established statutory or constitutional law. *Id*. In this case, the

parties do not dispute that Judge Norman changed Ms. Franklin's job duties and

assignments within the scope of her discretion as presiding judge. Therefore, the burden

shifts to Ms. Franklin to establish that Judge Norman's actions violated clearly established

law.

The Eleventh Circuit has held:

> We need not engage in a lengthy discussion of the patently obvious
> illegality of racial discrimination in public employment at the time the
> appellants voted to replace [the plaintiff in October 1989]. As we stated in
> *Yeldell* [*v. Cooper Green Hospital*, 956 F.2d 1056 (11ᵗʰ Cir. 1992)], "It can
> hardly be argued that in . . . 1989, when the events leading up to this lawsuit
> [took] place . . . intentional race discrimination in the workplace" did not
> violate the Fourteenth Amendment. 956 F.2d at 1064 (quoting *Washington
> v. Davis*, 426 U.S. 229, 239-41, 96 S. Ct. 2040, 2047-48, 48 L. Ed. 2d 597
> (1976)).
>
> . . . Given the clear state of the law prohibiting racial discrimination in
> public employment at the time the Board voted to replace Smith, no
> reasonable commissioner, with the information possessed by Lomax and
> Hightower, would have believed that his or her discrimination actions were
> constitutional.

*Smith v. Lomax*, 45 F.3d 402, 407 (11ᵗʰ Cir. 1995). As discussed *supra*, Ms. Franklin has

presented evidence that Judge Norman changed her duties and assignments so that she

no longer served as secretary to the Municipal Court Judges, in general, and Judge

Norman, in particular. In other words, the evidence shows that she was replaced, although

she was not terminated. The fact that she was not terminated; however, is not dispositive

of the issue of whether Judge Norman's conduct constituted intentional race discrimination

in violation of clearly established law. Indeed, as early as 1986, the Supreme Court had

established that intentional discrimination did not have to affect tangible aspects of a

person's employment in order to violate Title VII. *Meritor Savings Bank*, 477 U.S. at 64,

106 S. Ct. at 2404. The Eleventh Circuit, in 1983, held, "Because Title VII protects an employee's psychological as well as economic well-being . . . and because it is not necessary for a protected employee to demonstrate a 'tangible job detriment,'to prove a violation of Title VII, a reprimand that has a meaningful adverse effect on an employee's working conditions may be prohibited." *Keenan v. American Cast Iron Pipe Co.*, 707 F.2d 1274, 1277 (11th Cir. 1983)(citing, *inter alia*, *Rogers v. EEOC*, 454 F.2d 234, 238 (5th Cir. 1971), *cert. denied*, 406 U.S. 957, 92 S. Ct. 2058, 32 L. Ed. 2d 343 (1972)). In *Rogers*, as quoted in *Keenan*, the old Fifth Circuit adopted a broad interpretation of the language of 42 U.S.C. § 2000e-2, prohibiting discrimination with respect to "compensation, terms, conditions, or privileges of employment":

> This language evinces a Congressional intention to define discrimination in the *broadest possible* terms. Congress chose neither to enumerate specific discriminatory practices, nor to elucidate *in extenso* the parameter of such nefarious activities. Rather, it pursued the path of wisdom by being unconstructive, knowing that constant change is the order of our day and that the seemingly reasonable practices of the present can easily become the injustices of the morrow. Time was when employment discrimination tended to be viewed as a series of isolated and distinguishable events, manifesting itself, for example, in an employer's practices of hiring, firing, and promoting. But today employment discrimination is a far more complex and pervasive phenomenon , as the nuances and subtleties of discriminatory employment practices are no longer confined to bread and butter issues.

*Rogers*, 454 F.2d at 238. As early as 1971, this Circuit had rejected the notion that only "tangible" employment harm was actionable in a Title VII case. As stated above, Title VII law is applicable to § 1983 claims when § 1983 claims are asserted as parallel remedies. Therefore, Judge Norman's contention -- that she is entitled to qualified immunity because the law was not clearly established that she would violate federal law by making an

Page 27 of 33

employment decision based on race that did not affect the compensation of Ms. Franklin – is without merit.

Judge Norman cites this Court to caselaw regarding confidential employees as support for her contention that the law was not clearly established at the time she changed Ms. Franklin's job duties and assigned. Movants' Initial Submission, pp. 21-22 (citing *McDaniel v. Woodard*, 886 F.2d 311, 314, 316 (11th Cir. 1989). However, there is no legal support for applying the confidential employee cases, developed in First Amendment cases, to cases involving race discrimination. Indeed, in First Amendment cases, the Supreme Court has expressly provided less protection for such employees because of the potential for disruption occasioned by their disloyalty due to political affiliation and/or their protected speech is weighed against their individual interests in engaging in First Amendment activities. *Elrod v. Burns*, 427 U.S. 347, 367-68, 96 S. Ct. 2673, 2687, 49 L. Ed. 2d 547 (1976); *Shahar v. Bowers*, 114 F.3d 1097, 1103-04 (11th Cir. 1997); *Parrish v. Nikolits*, 86 F.3d 1088, 1093 (11th Cir. 1996); *Stough v. Gallagher*, 967 F.2d 1523, 1526 (11th Cir. 1992). There is simply no rational legal argument that a person's mere race can be considered a potential catalyst to such disruption. Thus, as expected, there is absolutely no caselaw allowing the "confidential" nature of a person's employment to allow a state actor to violate their right to equal protection.[11]

_____

[11]In *Smith v. Lomax*, the Eleventh Circuit rejected as "preposterous" the defendants' suggestion that the Title VII exemption for personal staff applied to actions brought under § 1983, or that the law was not clearly established because "they believed themselves shielded from section 1983 liability by a statutorily created personal staff exemption." 45 F.3d at 407 & n.13.

Therefore, based on the foregoing, this Court finds that Judge Norman is not entitled to qualified immunity as to Ms. Franklin's claim that Judge Norman violated her federally-protected rights by changing her job duties and assignments. Judge Norman's Motion for Summary Judgment, as to Ms. Franklin's § 1983 claims regarding the changes in her job duties and assignments, is due to be denied.

           b.    City's Liability for Section 1983 Claims.

The City contends that it cannot be held liable for Ms. Franklin's § 1983 claims because Ms. Franklin cannot establish that she was discriminated against based upon the policy or custom of the City.

The law is well-established that the City cannot be held liable for Judge Norman's conduct on the basis of *respondeat superior. Monell v. Department of Social Services*, 436 U.S. 658, 691-92, 98 S. Ct. 2018, 2037-38, 58 L. Ed. 2d 611 (1978).

Ms. Franklin has not presented evidence that a policy or custom of discrimination was responsible for the discrimination. She argues that the City has "historically delegated by custom and practice the final decision-making authority . . . to the department head," to wit, Judge Norman. Plaintiff's Responsive Submission, p. 20. She also argues that she has presented sufficient evidence that "the City, at its highest levels, knew exactly what and how Joyce Franklin was suffering under the authority of defendant Norman." *Id.*

It is well established that a municipality may be held liable under 42 U.S.C. § 1983 for a single illegal act committed by one of its officers, but not on a theory of respondeat superior. Instead, § 1983 liability may be premised upon a single illegal act a municipal officer only when the challenged act may be fairly said to represent official policy, such as when that municipal officer possess final policymaking authority over the relevant subject matter.

*Scala v. City of Winter Park*, 116 F.3d 1396, 1397 (11th Cir. 1997). However, the Eleventh

Circuit has held that a municipal officer does not have final policymaking authority when:

the final policymaker delegates decisionmaking discretion to the subordinate, but retains the power to review the exercise of that discretion:

[T]he mere delegation of authority to a subordinate to exercise discretion is not sufficient to give the subordinate policymaking authority. Rather, the delegation must be such that the subordinate's discretionary decisions are not constrained by official policies and are not subject to review.

*Id.* at 1399 (quoting *Mandel v. Doe*, 888 F.2d 783, 792 (11th Cir. 1989))(emphasis omitted).

Mr. Graham, the Personnel Director, stated that the "long standing rule" of the City

was to allow the presiding judge to assign an employee "any duty so long as the duty is

within [her] job classification." However, Mr. Gordon stated, the change in assignments

was appealable to the Mayor or the Jefferson County Personnel Board. In other words,

Judge Norman's decision to change Ms. Franklin's job duties and assignments was

reviewable. Thus, Judge Norman was not the final decision-maker for purposes of

establishing municipal liability for § 1983 claims.

Ms. Franklin also contend that the "City, at its highest levels, knew exactly what and

how Joyce Franklin was suffering." This Court notes that the Supreme Court has indicated

that the final decision-maker may adopt as policy the decision of a subordinate. *City of St.*

*Louis v. Praprotnik*, 485 U.S. 112, 129-30, 108 S. Ct. 915, 927-28, 99 L. Ed. 2d 107

(1988)(stating "[i]t would be a different matter if a [subordinate's] particular decision . . .

was cast in the form of a policy statement and expressly approved by the supervising

policymaker," or "if a series of decisions by a subordinate official manifested a 'custom or

usage' of which the supervisor must have been aware."). However, "mere failure to investigate the basis of a subordinate's discretionary decisions does not amount to a delegation of policymaking authority, *especially where . . . the wrongfulness of the subordinate's decision arises from a retaliatory motive or other unstated rationale*. In such circumstances, the purposes of § 1983 would not be served by treating the subordinate employee's decision as if it were a reflection of municipal policy." *Id*. (emphasis added).

The evidence shows that Ms. Franklin complained to Mr. Graham about the changes in her job duties and assignments. Mr. Graham explained to Ms. Franklin that she could file a grievance with the Jefferson County Personnel Board or the Mayor. It is undisputed that Ms. Franklin did not file a grievance. Moreover, the evidence is insufficient to establish that the Mayor and the Personnel Board, the two entities with the power to review and reverse Judge Norman's decisions, knew that Judge Norman had changed Ms. Franklin's job duties and assignments with the intent to discriminate. Therefore, at most, the evidence shows that these two entities -- the Mayor and the Personnel Board -- failed to investigate Ms. Franklin's complaints, which is insufficient to create municipal liability. Accordingly, summary judgment is due to be granted in favor of Defendant City on such claims.

B.   STATE LAW CLAIMS – Interference with an Economic Relationship

In her Complaint, Ms. Franklin complains that Judge Norman has "interfered with the lawful economic opportunities of the Plaintiff." Amended Complaint (Doc. \*\*), ¶ 17. The Court can find no Alabama tort referred to as "interference with economic

opportunities." The only discussion of this claim in Ms. Franklin's brief appears in its last

paragraph:

> The defendants are flat wrong in arguing that Joyce Franklin is just another
> City employee looking for money. She was expecting and had a right to
> expect that she would not be victimized by racial discrimination. It is only
> after overwhelming rejection by Canella Norman in virtually every possible
> way, and this defendant's refusal to have a competent, experienced white
> secretary coupled with the City's absolute disregard of Joyce's cries for
> assistance that Joyce Franklin filed an EEOC charge and brought this action.
> Joyce Franklin tried to escape the department that she had served and could
> not without sacrificing thirty years of accumulated retirement benefits. She
> was and is trapped in a working hell and undeserved isolation and racial
> discrimination. Under these circumstances a jury may determine that
> defendant Norman was action [sic] with actual malice and she may be
> subjected to judgment on the alleged claims of tortious interference with
> economic opportunities. *Perlman v. Shurett*, 567 So. 2d 1296 (Ala. 1990).

Plaintiff's Responsive Submission, pp. 22-23.

Defendants, equating the alleged tort with intentional interference with a business

or contractual relationship, contend that Ms. Franklin cannot show that Judge Norman is

liable because she cannot establish that Judge Norman acted outside the scope of her

employment and that she acted with actual malice. Movant's Initial Submission, p. 25.

This Court agrees. Ms. Franklin cannot show that Judge Norman was acting beyond the

scope of her authority as Presiding Judge or that Judge Norman acted with actual malice,

as defined by state law. *Perlman v. Shurett*, 567 So. 2d 1296, 1297-1299 (Ala. 1990).

Summary judgment is due to be granted in favor of Defendants as to such claim.

## IV. CONCLUSION

For the reasons set forth above, the Court finds that Defendants' Motion for

Page 32 of 33

Summary Judgment is due to be granted in part and denied in part. Ms. Franklin's remaining claim is for race discrimination with regard to her job duties and assignments, in violation of Title VII as against the City, and in violation of the Equal Protection Clause and § 1981, actionable through § 1983, as against Judge Norman in her individual capacity and on these claims Defendants' Motion for Summary Judgment is due to be denied. Moreover, the Motion for Summary Judgment is deemed moot as to Ms. Franklin's claims regarding discriminatory/retaliatory failure to transfer, as such claims are not asserted by Plaintiff. The Motion for Summary Judgment as to all other claims is due to be granted. The Court finds no existing material issue of triable fact as to the claims nullified by grant of summary judgment in favor of Defendants.

The Court will enter an Order contemporaneously herewith in accordance with this Memorandum Opinion.

DONE this _____ day of April, 1999.

H. DEAN BUTTRAM, JR.
UNITED STATES DISTRICT JUDGE